IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD A. GARZIANO, SR.,** and **NANCY B. GARZIANO** | **PLAINTIFFS/ COUNTER-DEFENDANTS** |
| v. | CAUSE NO. 1:11CV393-LG-JMR |
| **LOUISIANA LOG HOME COMPANY, INC.** | **DEFENDANT/ COUNTER-CLAIMANT** |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [7] to Dismiss or for Summary Judgment filed by the Defendant, Louisiana Log Home Company, Inc. LLH seeks dismissal or summary judgment as to all of the Plaintiffs' claims against it. In addition, the Court considers the Plaintiffs' Motion to Strike [26]. The issues have been fully briefed. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that the Plaintiffs' Motion to Strike should be granted. Also, LLH has shown there is no question of material fact for the jury in regard to the Plaintiffs' claims against LLH. Accordingly, LLH's Motion, construed as one for summary judgment pursuant to Fed. R. Civ. P. 56, will be granted and Plaintiffs' claims dismissed.

FACTS AND PROCEDURAL HISTORY

This case concerns the Plaintiffs' purchase of a log home package from LLH. The parties entered into a written Sales Agreement which set out the materials to be delivered to Plaintiffs' building site in Pass Christian, Mississippi. (Def. Mot. to Dismiss Ex. A1, ECF No. 7-1). The Sales Agreement provided an "F.O.B. Factory

Price," with shipping costs to be determined by the trucking company.  The Plaintiffs agreed to make a down payment, a second large payment within thirty days of delivery, and a third and final payment at delivery.  The Agreement specified that "All costs of transportation shall be borne by the purchaser," and "Shipping charges are paid directly to the trucking company at the time of delivery by cash or personal check."  The parties later executed a separate Sales Agreement, containing the same terms, for more logs to raise the ceiling height of the home.

      The Plaintiffs paid all amounts due on the first and second installments of the two Sales Agreements.  When LLH was ready to deliver the package to Plaintiffs' site, it informed Plaintiffs that the total due was $7686.43.  This figure included the third and final installment for the two Sales Agreements, plus $2625.60 in transportation costs.  The Plaintiffs informed LLH that they did not have the funds available to pay the amount due.  As the package was already en route from the factory, LLH diverted it to Holden, Louisiana, where the package remains in storage.

      The Plaintiffs filed this lawsuit in Harrison County, Mississippi Circuit Court alleging that LLH breached the contract, was unjustly enriched, violated the duty of good faith and fair dealing, and violated the Mississippi Deceptive Trade Practices Act.  They allege that LLH did not inform them that the logs would be shipped from Tennessee rather than manufactured and shipped from Holden, Louisiana.  They allege the greater distance resulted in a significantly higher transportation cost than they were anticipating.  They also allege they were informed by LLH that the second installment payment was full and final payment for the package.  They seek delivery

-2-

of the package or disgorgement of $38,595 paid to LLH for the package.

LLH removed the case to this Court and made counterclaims against the Plaintiffs for breach of contract, breach of the duty of good faith and fair dealing, and negligent misrepresentation.  LLH now moves for dismissal or summary judgment as to the Plaintiffs' claims against it.  Neither LLH's Motion nor the Plaintiffs' response address LLH's counterclaims.

Plaintiffs' Motion to Strike:

The Court first resolves the question of which documents submitted by LLH will be considered.  After filing its Motion, LLH supplemented it three times.  (*See* ECF Nos. 12, 19, 20, and 23).  The Plaintiffs moved to have the supplements stricken. (Mot., ECF No. 26).  LLH's first supplement is a letter written by one of the Plaintiffs to State Attorney General Jim Hood, describing the dispute and asking his office to investigate.  The letter is unauthenticated and should be stricken for that reason. *Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 332-33 (5th Cir. 2007); *Travland v. Ector Cnty., Tex.*, 39 F.3d 319 (5th Cir. 1994).  The letter also relays information that is already in the record via Plaintiffs' affidavit and correspondence with LLH, making it redundant.

The second supplement contains evidence of LLH's damages, such as costs for the package materials and storage of the package.  This evidence goes to LLH's counterclaims, not Plaintiffs claims.  As LLH has not moved for dismissal or summary judgment on its counterclaims, the evidence is irrelevant to the Court's analysis of LLH's Motion and will be disregarded.

The third supplement attempts to correct a deficiency in the presentation of LLH's supplemental evidence of its damages. The Plaintiffs had objected that LLH did not submit the supplemental evidence of its damages under affidavit. The third supplement consists of an affidavit certifying that the documents were LLH's business records. Because the Court finds the business records to be irrelevant to the issues it has been asked to resolve, the third supplement will be disregarded as well. The Plaintiffs' Motion to Strike [26] will be granted in all respects.

<u>The Legal Standard</u>:

LLH has moved for dismissal or, in the alternative, summary judgment. Attached to its Motion are the contracts, some written correspondence, and an affidavit.[1] The Plaintiffs similarly responded with written correspondence, an affidavit, and other summary judgment evidence.

The contracts are central to the claims and therefore are not matters outside the pleadings that would require the Court to apply the Rule 56 standard. *Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498-99 (5th Cir. 2000). The remainder of the documents submitted help establish some of the facts of the case. Although the viability of Plaintiffs claims depend primarily on the contracts, the Court also refers to the additional evidence submitted by the parties, which are matters outside the pleadings. The Rule 56 standard is therefore applicable.

---

[1] The affidavit is unsigned by the affiant, and is therefore not competent summary judgment evidence. (Def. Mot. to Dismiss Ex D, ECF No. 7-6). It has not been relied upon by the Court.

DISCUSSION

Breach of Contract

The Plaintiffs allege that LLH refused to perform under the contracts by failing to either deliver the package or refund Plaintiffs' $38,595 payment. Plaintiffs argue that LLH was obligated by Mississippi Code § 75-2-503 to allow them to inspect the goods prior to payment, and instead LLH failed to produce the goods for inspection at the contracted delivery location. LLH argues that it did not breach the contracts, rather its actions were in accordance with the terms of the contracts and Mississippi law.

There are two written contracts with identical terms governing the parties' rights and duties in this case. When construing a contract, the Court is to "read the contract as a whole, so as to give effect to all of its clauses." *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss.1992). The Court should construe a contract objectively and determine the parties' intent from "the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties." *Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So. 2d 1037, 1045 (Miss. Ct. App. 2004).

The contracts are brief, and the language used is clear. LLH agreed to deliver specified building materials to the Plaintiffs at an "F.O.B. Factory Price" of $43,656.43. Shipping costs were not included in the Price, and were to be "paid directly to the trucking company at the time of delivery by cash or personal check." The price was payable in three installments, due at specified times. The last installment was due "at delivery prior to offloading material." The parties "agreed

that all monies paid on this contract are earnest monies and that no refund will be made if delivery is refused or if this contract is terminated by the purchaser without the mutual consent of the seller."

Plaintiffs state that LLH notified them on July 17, 2011, that their package was on its way and would be delivered on the 19th. Prior to the package reaching the Plaintiffs' building site, they notified LLH they would not be able to pay the last installment because they had not had sufficient notice. (Pl. Resp. Att.1 , ECF No. 9-1). Plaintiffs later sent a letter to LLH, dated July 28, 2011, explaining that they thought they had fully paid the contract price after the second installment. They had obtained what they thought was a "full and final payment" figure of $32,095 from LLH's Slidell, Louisiana office, which they had remitted to LLH. (*Id.*) Despite the total amount they had paid being approximately $5000 less than the contract price, they believed they owed only a relatively minor amount for transportation of the package. When LLH attempted delivery, Plaintiffs no longer had funds to pay the third installment or the transportation charge - a total of $7686.43. (Def. Mot. Ex. C, ECF No. 7-5). Notwithstanding their inability to pay at that time, they expressed a desire to do so in the future: "It is our definite goal and purpose that we will seek the funds necessary to save our investment in rebuilding our home." (*Id.*).

Material breach is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose. *McCoy v. Gibson*, 863 So. 2d 978, 980 (Miss. Ct. App. 2003) (citations and quotation marks omitted). The Plaintiffs contend that LLH

breached the contract by 1) failing to deliver the log home package to their building site; and 2) failing to provide them with adequate notice so that they could take delivery.

Plaintiffs first argue that LLH breached the contract by failing to deliver the package to their building site. LLH argues that the Plaintiffs informed it that they could not pay for the package prior to delivery, and therefore it was justified in diverting the package to storage.

Notice of inability to complete performance constitutes breach of contract. *Jackson Lumber Co. v. Moseley*, 11 So. 2d 199, 202 (Miss. 1942). LLH had no obligation to deliver the package after it was advised that the Plaintiffs could not pay for it. *See Lamborn v. Blattner*, 6 F.2d 435, 438 (5th Cir. 1925). *See also Massey v. Moore*, 633 So.2d 1044, 1046 (Miss. 1994) (failure to make payments required under agreement constituted breach of contract, allowing appropriate steps to limit damages); *Ross Cattle Co. v. Lewis*, 415 So. 2d 1029, 1035 (Miss. 1982). The Uniform Commercial Code gave LLH the option of withholding delivery under these circumstances. MISS. CODE ANN. §§ 75-2-610; 75-2-703. The Plaintiffs cannot show that LLH breached the contracts by delivering the package to storage rather than Plaintiffs' building site.

Plaintiffs next argue that LLH breached the contracts by failing to give them notification reasonably necessary to enable them to take delivery, citing *Ward v. Merchants & Farmers Bank*, 394 So. 2d 1374 (Miss. 1981). The Court in that case found a violation of MISS. CODE § 75-2-503 had been sufficiently alleged to survive a

motion to dismiss.  Section 75-2-503 is a provision of the Mississippi's Uniform Commercial Code that "requires the seller to hold the goods at the buyer's disposition and to give such buyer notice necessary for him to take delivery." *Ward*, 394 So. 2d at 1376.  The provision also states that "[t]he manner, time and place for tender are determined by the agreement and this chapter . . . " MISS. CODE. ANN. § 75-2-503(1).  In *Ward*, the buyers alleged they were prevented by a third party from obtaining their goods, and they were not informed they had a short window of time within which to obtain the goods.  The court found that the buyers had sufficiently alleged a cause of action against the seller for violation of Section 75-2-503.  *Ward*, 394 So. 2d at 1375-76.

      The facts in this case are very different.  According to the Plaintiffs' affidavit, during the month of July 2011, LLH had been pressing them for a delivery date. (Pl. Resp. Att. 1, ECF No. 9-1).  LLH advised them on July 17 that the package would be arriving on July 19.  The contracts clearly obligated Plaintiffs to pay a total of $43,656.43 and make a third and final payment at the time of delivery.  LLH's "method of tender" was in compliance with the terms of the contracts.  The Plaintiffs therefore had adequate notice of delivery, regardless of whether they were financially prepared to take delivery.

      Plaintiffs have not submitted evidence creating a question of material fact regarding whether LLH breached the contracts at issue.  Therefore, LLH is entitled to summary judgment on this claim.

Unjust Enrichment

In order to bring a successful unjust enrichment claim in Mississippi, the "claimant must show there is no legal contract but the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another." *Johnston v. Palmer*, 963 So. 2d 586, 595 (Miss. Ct. App. 2007) (citations and quotation marks omitted). There is no dispute that a legally binding, written contracts exist between the Plaintiffs and LLH. Plaintiffs therefore cannot make a viable claim of unjust enrichment against LLH.

Deceptive Trade Practices Act

The DTPA prohibits misrepresentation of the source or geographic origin of goods. MISS. CODE ANN. § 75-24-5 (b) & (d). The Plaintiffs argue that LLH and its salesman, Glenn Hood, misrepresented where the logs comprising their package would be manufactured, leading them to believe they would be manufactured and transported from Holden, Louisiana. Plaintiffs argue that Glenn Hood told them "that due to an ongoing drought his loggers had an enhanced opportunity to harvest cypress logs in an area that would normally be inundated by water." (Pls. Resp. 6, ECF No. 10). Assuming that Hood made this statement to the Plaintiffs, it contains no representation about the location of the manufacturing.

The Plaintiffs also attach the business card for LLH, which they argue states that LLH is a manufacturer of log home packages with its plant being located in Holden, Louisiana. (Pls. Resp. Ex. B, ECF No. 9-3). The business card, however, only identifies LLH's "manufacturing" contact as James A. Hood, located in Holden,

Louisiana, and its "sales" contact as Glenn Hood, located in Slidell, Louisiana. There is no representation that LLH manufactured the packages, or that manufacturing took place in Holden, Louisiana.

Finally, Plaintiffs attach the results of an internet search for Louisiana Log Home. (Pls. Resp. Ex. C, ECF No. 9-4). The search results includes a one-sentence summary for LLH's website: "Louisiana Log Home Company is a manufacture [sic] of logs for commercial and residential use." The LLH website itself does not indicate that LLH manufactures the logs, nor does it indicate where manufacturing takes place. It states:

> To meet the high demand and accelerated consumer acceptance, Louisiana Log Home Company, Inc. has developed a superior product featuring a triple tongue and groove log construction system. This product is produced on patented machinery (patent number 3791430); used exclusively for Louisiana Log Home Company, Inc. that is second to none in the industry.

LOUISIANA LOG HOME COMPANY, INC., http://www.louisianaloghome.com/index.html (last visited June 1, 2012). There is no mention of where the logs are manufactured, or even if LLH manufactures them. If anything, this language distances LLH from the manufacturing process.

The Court finds Plaintiffs' evidence regarding a misrepresentation of the source or geographic origin of goods inadequate to create a question of material fact for the jury.

Breach of Duty of Good Faith and Fair Dealing

All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement. *Morris v. Macione*, 546 So.2d 969, 971 (Miss.1989).

-10-

The covenant of good faith and fair dealing in contracts also applies to contracts governed by the Mississippi Uniform Commercial Code. *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992) (citing MISS. CODE ANN. § 75-1-203 (1972)). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac*, 609 So.2d at 1272 (quoting Restatement (Second) of Contracts § 205, 100 (1979)).

Plaintiffs contend that the same representations about the origin of the logs as those set out above are evidence of LLH's bad faith. For the same reasons the Court found the representations inadequate for a DTPA claim, they are also inadequate to show a breach of the duty of good faith and fair dealing. LLH is entitled to summary judgment in regard to this claim.

Intentional Infliction of Emotional Distress

In order to prevail on a claim for intentional infliction of emotional distress, the severity of the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So. 2d 626, 630 (¶ 18) (Miss. 2001) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). Generally, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Id.* at (¶ 19) (quoting *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss. 1993)). There is no

evidence of any outrageous or extreme conduct in this record.  The Plaintiffs contend that LLH should have foreseen that their misrepresentations would be greatly distressing to people such as themselves who had lost their family home to Hurricane Katrina.  But the Plaintiffs have failed to provide evidence of a misrepresentation, much less one that could be characterized as "atrocious" or "utterly intolerable in a civilized society."

CONCLUSION

For the reasons set out above, the Court finds that LLH has shown there is no question of material fact for the jury as to any of Plaintiffs' claims.  Accordingly, summary judgment will be granted in favor of LLH.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Strike [26] is **GRANTED**.  Defendant's Supplemental Motions to Dismiss or for Summary Judgment [12, 19, and 20], and Defendant's Rebuttal [23] in support of the supplemental motions, are **STRICKEN**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion [7] to Dismiss or for Summary Judgment filed by the Defendant, Louisiana Log Home Company, Inc., is **GRANTED**.  Plaintiffs' claims against the Defendant are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 4th day of June, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE